**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

| | | |
|---|---|---|
| **JAMES L. AHERN, JR.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 4:21-cv-5** |
| | § | |
| **ROBERT MOULTON BRIGGS,** | § | |
| **BRIGGS/FREEMAN REAL ESTATE** | § | |
| **BROKERAGE, INC., D/B/A BRIGGS** | § | |
| **FREEMAN SOTHEBY'S INTER-** | § | |
| **NATIONAL REALTY, IG ICON** | § | |
| **GLOBAL REAL ESTATE, LLC,** | § | |
| **MATTHEW CLARK MCWILLIAMS,** | § | |
| **MCM REAL ESTATE ADVISORS, LLC,** | § | |
| **AND BERNARD UECHTRITZ** | § | |
| | § | |
| **Defendants.** | § | |

## NOTICE OF REMOVAL

COMES NOW Bernard Uechtritz and IG Icon Global Real Estate, LLC, Defendants in the above-referenced case ("Defendants") and file this their Notice of Removal and would respectfully show this Court as follows:

### I.
### The Removed Proceeding

1.     The underlying proceeding was filed in the 394th Judicial District Court, Jeff Davis County, Texas, Cause No. CV2002661, entitled, *James L. Ahern, Jr., Plaintiff v. Robert Moulton Briggs, Briggs/Freeman Real Estate Brokerage, Inc. d/b/a Briggs Freeman Sotheby's International Realty, IG Icon Global Real Estate, LLC, Matthew Clark McWilliams, MCM Real Estate Advisors, LLC and Bernard Uechtritz, Defendants* (the "State Court Lawsuit").  Plaintiff's attorneys-of-record are D. John Neese, Andrew K. Meade, Wayne D. Collins and Leann M. Pinkerton of Meade & Neese, LLP, 2118 Smith St., Houston, Texas 77002.  Defendants' attorney of record is Joyce W. Lindauer, Joyce W. Lindauer Attorney, PLLC, 1412 Main St., Suite 500,

Dallas, Texas 75202.  All current pleadings, process, orders, and other filings in the state court action are attached to this notice as required by 28 U.S.C. §1446(a).

## II.
### Grounds For Removal

2.      The State Court Lawsuit is removed pursuant to 28 U.S.C. §§1441 and/or 1452. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1334 in that the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court") expressly retained jurisdiction over the subject matter of the State Court Lawsuit pursuant to an order of the Bankruptcy Court in the Chapter 11 case of *KC7 Ranch Ltd., et. al., Debtors,* Case No. 17-45166-mxm (the "Bankruptcy Case").  The subject matter of the State Court Lawsuit is a real estate commission allegedly earned by the Plaintiff on the sale of certain real property known as the "KC7 Ranch".  The sale of the KC7 Ranch by the Debtor in the Bankruptcy Case was approved pursuant to an order titled *"Order Approving Motion for Order Authorizing (I) Sale of the KC7 Ranch and Related Property Free and Clear of all Liens, Claims, Encumbrances, and Interests, and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale"* entered by the Bankruptcy Court on January 28, 2019 (the "Bankruptcy Order"). A true and correct copy of the Bankruptcy Order is attached hereto as **Exhibit "A"** and incorporated herein by reference.

3.      In paragraph 27 of the Bankruptcy Order, the Bankruptcy Court retained jurisdiction as follows:

> F. RETENTION OF JURISDICTION
>
> 27.      This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Purchaser APA, and all aspects of this Order and further to hear and determine any and all disputes between the Debtors, CMP, the Purchaser and/or any interested party.

4.      The federal courts have original and exclusive jurisdiction over bankruptcy matters. 28 U.S.C. §1334.  The Bankruptcy Order was expressly predicated on provisions of the U.S. Bankruptcy Code, i.e., the Bankruptcy Court's authority to approve the sale of property of the bankruptcy estate and assignment of related contracts under 11 U.S.C. §§ 105, 363 and 365. Therefore, this is a civil proceeding "arising in" a case under Title 11 of the United States Code, over which this Court has jurisdiction under 28 U.S.C. §1334(b).  As such, this proceeding is removable pursuant to 28 U.S.C. § 1452.

5.      This Court further has jurisdiction over the State Court Lawsuit because it is "related to" the Bankruptcy Case under 28 U.S.C. §1334(b).  In connection with the sale of the KC7 Ranch, the Bankruptcy Court approved the Debtor's retention of the Defendants as professionals for the purpose of marketing and selling the Ranch, and the payment of the Defendants' real estate commissions from property of the bankruptcy estate.  A true and correct copy of the Bankruptcy Court's *Order Granting Expedited Application to Employ Broker*, entered October 3, 2018, is attached hereto as **Exhibit "B"** and incorporated herein by reference.  To the extent the Plaintiff alleges that the subject commissions were awarded to the wrong parties, which the Defendants deny, redress could be sought against the bankruptcy estate.  Any action that may "conceivably have any effect" on the estate is "related to" the bankruptcy case and, therefore, subject to jurisdiction of the bankruptcy court under 28 U.S.C. §1334(b).  *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 585 (5th Cir. 1999).

6.      Defendants will promptly file a copy of this notice of removal with the clerk of the State Court Lawsuit pursuant to Federal Rule of Bankruptcy Procedure 9027(c).

7.     This notice of removal (a) concerns a civil action commenced after the Debtor's bankruptcy case was commenced, (b) is filed within the time provided by the Bankruptcy Rules, and (c) is, therefore, timely under Federal Rule of Bankruptcy Procedure 9027(a)(3).

8.     Attached to this notice as **Exhibit "C" and "D"** are the following documents:

- **Exhibit "C"** - A copy of the Plaintiff's Original Petition and Request for Disclosure; and
- **Exhibit "D"**- A copy of Defendants Bernard Uechtritz's and IG Icon Global Real Estate, LLC's Original Answer

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the State Court Lawsuit be removed to the United States District Court for the Western District of Texas, Pecos Division, and for such other and further relief to which it may be justly entitled.

Dated: January 27, 2021.

Respectfully submitted,

_/s/ Joyce W. Lindauer_
Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
       guy@joycelindauer.com
       kerry@joycelindauer.com

ATTORNEYS FOR BERNARD UECHTRITZ
AND IG ICON GLOBAL REAL ESTATE,
LLC

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing document has been delivered via email and certified mail to the below counsel of record, on this the 27th day of January, 2021.

D. John Neese
Andrew K. Meade
Wayne D. Collins
Leann M. Pinkerton
Meade & Neese, LLP
2118 Smith St.
Houston, Texas 77002

                                         _/s/ Joyce W. Lindauer_____
                                         Joyce W. Lindauer

# EXHIBIT "A"



**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 28, 2019**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

In re:

**KC7 RANCH, LTD, et al.,**

                   **Debtors.**

**CASE NO. 17-45166-mxm**
**Chapter 11**
**(Jointly Administered)**

---

### ORDER APPROVING MOTION FOR ORDER AUTHORIZING (I) SALE OF THE KC7 RANCH AND RELATED PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE

---

On January 25, 2019, this Court held a hearing on the *Motion for Order Authorizing (I) Sale of the KC7 Ranch and Related Property Free and Clear of All Liens, Claims, Encumbrances, and Interests and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale* [Docket No. 316] (the **"363 Motion"**) filed by Joseph M. Coleman, Chief Marketing Professional (the **"CMP"**) for the bankruptcy estate of KC7 Ranch, Ltd. (the **"Debtor"**) and its affiliated Debtors, KC7 Partners, LLC; KC7 GP, LLC; and KC7 Holdings, LLC (collectively with the Debtor, the **"Debtors"**) pursuant to 11 U.S.C. §§ 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006. The Court finds that: (i) it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (ii)

---

this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the statutory predicates for

the relief are 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, and 9014 of the Federal

Rules of Bankruptcy Procedure; (iv) the CMP and Broker (as defined in the 363 Motion) have

thoroughly and completely marketed the **Property** (as defined in the 363 Motion) to yield the

highest and/or best offer under the circumstances; (v) Debtors previously marketed the Property

without providing any offers presented to the Bankruptcy Court; (vi) the CMP, on behalf of the

Debtors, has demonstrated good, sufficient and sound business reasons and justifications for the

sale of the Property, including the mandate to sell the Property as set forth in the Order Authorizing

and Approving Debtors' Retention of a Chief Marketing Professional. [Docket No. 228]; (vii)

approval of the Purchaser APA (defined below) and the consummation of the closing of the

transaction set forth in the Purchaser APA is in the best interest of the Debtors, their creditors, their

estates and all parties in interest; (viii) the Purchaser has deposited $1.5 million with the Title

Company (as defined below); (ix) Purchaser is financially capable of performing and has agreed and

represented that it shall perform all of its obligations under the Purchaser APA; (x) the Debtors are

capable of and shall perform all of their respective obligations under the Purchaser APA; (xi) the

relief requested in the 363 Motion is in the best interests of the Debtors, their estates, and their

creditors; (xii) proper and adequate notice of the 363 Motion and all exhibits attached thereto, and

the Bid Procedures attached to and approved by this Court's *Order Approving Expedited Motion for*

*Order (I) Approving Bid Procedures for Sale of KC7 Ranch Property and Related Assets; (II) Approving Bid*

*Protections; and (III) Approving the Form and Manner of Notice of Auction* [Docket No. 324] (the **"Bid**

**Procedures Order"**) and the hearing thereon has been given and that no other or further notice is

necessary; (xiii) a reasonable opportunity to object or be heard regarding the relief requested in the

363 Motion has been afforded to all interested parties; (xiv) the CMP, on behalf of the Debtors, has

provided full and adequate notice of any properly served upon all applicable parties-in-interest:  a)

Notice of (A) Auction for the Sale of the KC7 Ranch Property and Related Assets and (B) Hearing to Approve Sale [Docket No. 326] on January 4, 2019 and b) Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts [Docket No. 330] on January 8, 2019; (xv) upon the record herein, including, without limitation, all evidence presented at the hearing on January 25, 2019 (the **"Sale Hearing"**) and all arguments made by counsel, the CMP has shown good, sufficient, and sound business purpose and justification for the relief requested in the 363 Motion; (xvi) Franklin Mountain KC7, LLC (the **"Purchaser"**) has complied with all material terms and procedures of the Bid Procedures and Bid Procedures Order and accordingly is participating in an arm's-length transaction in good faith, without collusion, and in a fair and equitable manner; (xvii) the consideration to be paid by the Purchaser for the Property pursuant to the terms of the Purchaser PSA, as defined below, (the **"Purchase Price"**) constitutes a reasonably equivalent value for the Property; (xviii) there are no outstanding, unpaid cure obligations necessary to assume the Designated Contracts (as defined below) pursuant to 11 U.S.C. § 365; (xix) the Purchaser has provided adequate assurance of future performance as necessary to assume the Designated Contracts pursuant to 11 U.S.C. § 365; and (xx) therefore, cause exists to grant the 363 Motion as provided herein.  Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**A.     RESOLUTION OF OBJECTIONS**

1.     All objections to the 363 Motion not expressly resolved herein, including those objections related in any way to the assumption and assignment to the Purchaser of any Designated Contract, that have not been withdrawn are hereby overruled or denied.

**B.  APPROVAL OF SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

2.      363 Motion Approval.  Pursuant to all applicable statutory and procedural predicates, including, without limitation, sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code[1] and Bankruptcy Rules[2] 2002, 6004, 6006 and 9014, the 363 Motion is hereby approved as provided herein and the Purchase and Sale Contract (the **"Purchaser APA"**), substantially in the form attached as **Exhibit A** to this Order, is hereby approved in its entirety, subject to any non-material modifications made prior to the closing of the sale transaction contemplated by the Purchaser APA (the **"Closing"**) as set forth therein, and subject to the terms and conditions contained in this Order, the Debtors, CMP and Purchaser are authorized, directed and ordered to take all actions and to execute all documents and certifications necessary to consummate the Purchaser APA.

3.      Transfer of Purchased Assets Free and Clear.  Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized, directed and ordered to transfer the Property in accordance with the terms of the Purchaser APA.  The Property shall be transferred to the Purchaser, and upon consummation of the Purchaser APA and Closing, such transfer shall (i) be valid, legal, binding, and effective; (ii) vest the Purchaser with all right, title, and interest of the Debtors in the Property; and (iii) be free and clear of all liens, claims, and encumbrances, tenancies, water leases, including, but not limited to, The Wolfcamp Partners lease, property management agreements and property service agreements, or other agreements, if any, affecting the Property and not constituting a Designated Contract (as defined below), except Permitted Encumbrances (as defined in the Purchaser APA) (collectively **"Liens and Claims"**), with all such Liens and Claims to attach to the proceeds of the sale in the order of their priority and with the same validity, force, and

---

[1] References to the Bankruptcy Code mean 11 U.S.C. §§ 101, *et seq.*  All section references cited herein refer to the Bankruptcy Code unless specifically noted otherwise.

[2] References to the Bankruptcy Rules mean the Federal Rules of Bankruptcy Procedure.

effect which they now have against the Property, if any, subject to any claims and defenses the Debtors and/or creditors may possess with respect thereto, except as otherwise provided herein.

4.      <u>Highest and Best Bid</u>.  The sale terms set forth in the Purchaser APA represent the highest and best offer received by the CMP and Broker for the Property.  The Purchase Price set forth in the Purchaser APA is fair and reasonable.  The terms of the Purchaser APA, which have been negotiated and proposed by the CMP and Purchaser in good faith, from an arm's length bargaining position, and without fraud, collusion or any impropriety whatsoever, are approved.

5.      <u>Debtors' Authorization</u>.  The Debtors are authorized, directed, and ordered to sell and transfer the Property to the Purchaser on behalf of the Debtors.  Debtors' representative, with authority to legally bind each of the Debtors (the **"Debtors' Representative"**), is authorized, directed, and ordered to (i) execute the Purchaser APA within two (2) business days after entry of this Order; (ii) execute any and all deeds, bills of sale, certificates, affidavits, assignments, certifications, acknowledgments, agreements, disclosures, and other closing documents necessary or appropriate to transfer the Property to the Purchaser or to its assignees, including without limitation each and every exhibit to the Purchaser APA (as may be reasonably modified as necessary for Closing), and other documentation and certificates as required by the Title Company for Closing; (iii) execute an assignment assigning all of each of Debtors' rights and obligations under the Designated Contract, in form and content reasonably satisfactory to Purchaser; and (iv) provide information, answer questions, and otherwise reasonably cooperate with the CMP and aid with the Closing.

6.      <u>Section 363(m) - Good Faith Purchaser</u>.  Purchaser is not an "insider" or "affiliate" of the Debtors, the CMP or Broker (as such terms are defined in section 101(31) of the Bankruptcy Code).  None of the Debtors, CMP, Broker or Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to this transaction.  Purchaser is a

good-faith purchaser of the Property, participated in the sale transaction in good faith and did not collude with or take unfair advantage of any other party during the sale process. The Purchase Price to be paid at Closing by the Purchaser is fair and reasonable and represents equivalent and fair market value for the Property. Further, Purchaser will be acting in good faith in closing the transaction contemplated by the Purchaser APA pursuant to this Order. The Purchaser is therefore a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protection afforded by that section of the Bankruptcy Code.

7. **Good Faith**. Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity of the transfer of the Property to Purchaser, unless such transfer of the Property to Purchaser and the consummation of the sale transaction authorized by this Order are stayed by this Court or such other court of competent jurisdiction, pending appeal, prior to the Closing.

8. **Section 363(n) – Unavoidable Sale**. None of the Debtors, CMP, Broker, or Purchaser have engaged in any conduct that would cause or permit the Purchaser APA or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code. The Purchaser is unaffiliated with any other potential bidders, and did not enter into any agreement with, intimidate, conspire with, or otherwise collude with any party to adversely affect the Purchase Price or any bidding for the Property. Given the Purchase Price to be paid by the Purchaser, Purchaser's good faith, and lack of any evidence of collusion or adverse behavior by the Purchaser or any other party, the sale of the Property to Purchaser shall be unavoidable under section 363(n) of the Bankruptcy Code.

9. **Closing**. The Closing Date (as defined in the Purchaser's APA) shall occur on or before **February 15, 2019**, or such other date that is within fifteen (15) days thereafter at the

discretion of the CMP or as the CMP and Purchaser may mutually agree or is otherwise ordered by this Court.

10.     <u>Satisfaction of Section 363(k)</u>.    Hitachi Infrastructure Systems (America), LLC's ("**Hitachi**") possesses a properly perfected secured claim in and against the Property.   Hitachi was provided adequate and proper notice of the Auction and an opportunity to credit bid its secured claim in accordance with section 363(k) of the Bankruptcy Code.   Hitachi declined to exercise its right to credit bid.

11.     <u>Satisfaction of Section 363(f)</u>.    The terms and conditions of the Purchaser APA satisfy section 363(f) of the Bankruptcy Code.   As to Hitachi, the proposed sale satisfies section 363(f)(2) of the Bankruptcy Code because Hitachi consents to the sale.   The proposed sale also satisfies section 363(f)(3) of the Bankruptcy Code because the net proceeds from the Closing of the Purchaser APA are greater than the value of all liens on the Property, including Hitachi's.   The transfer of the Property to the Purchaser under the Purchaser APA upon Closing shall therefore be a legal, valid, and effective transfer of the Property, and shall vest Purchaser with all right, title, and interest of the Debtors to the Property free and clear of all Liens and Claims.

12.     <u>Taxes</u>.    All *ad valorem* taxes owed and unpaid by the Debtors with respect to the Property which are secured by first and prior liens on the Property, if any exist, shall be paid at Closing of the sale contemplated herein.   Specifically: (i) the ad valorem tax lien for tax year 2018 and prior pertaining to the Property shall attach to the sale proceeds and the Title Company shall pay all ad valorem tax debt owed incident to the Property immediately upon Closing; and (ii) the ad valorem taxes for the year 2019 pertaining to the Property shall be prorated in accordance with the Purchaser PSA and shall become the responsibility of the Purchaser and the year 2019 ad valorem tax liens shall be retained against the Property until such taxes are paid in full.

## C.     EFFECTUATION OF SALE AND DISTRIBUTION OF PROCEEDS

13. <u>Payment of Purchase Price</u>. All amounts payable by Purchaser in performance of the Purchaser APA, including the Purchase Price, shall be paid by wire transfer at Closing directly to Lawyers Title Lathram Pou & Associates, 4131 N. Central Expressway, Dallas, Texas 75204, Attention: Monica Forman (the **"Title Company"**), as escrow agent on behalf of the Debtors.

14. <u>Payment of Fees at Closing</u>. The Title Company shall distribute and/or escrow, as applicable, the following amounts from the Purchase Price received at Closing:

A. **<u>Hitachi</u>**: Pursuant to the *Order Granting Joint Motion of Hitachi and the Darden Claimants for an order Approving and Allowing the Modified Claims of Hitachi*, as Ordered [Docket No. 230] (the "**Hitachi Claims Order**"), Hitachi shall be paid at Closing as follows:

1. Secured claim in the amount of $22,450,152.26; plus

2. Interest accrued through January 31, 2019 in the amount of $2,807,042.15; plus

3. Interest accruing from February 1, 2019 through Closing at the rate of $7,541.30 per day, in the event Closing does not occur prior to February 1, 2019; plus

4. Post-Petition Fees, Costs/Expenses (as defined in the Hitachi Claims Order), in the amount of $763,163,61, pursuant to the *Hitachi Infrastructure's Application to Determine Amount of Reasonable Post-Petition Fees, Costs, and Expenses, etc.* [Docket No. 339] (the **"Expense Application"**); and the entry of this Order shall constitute an Order of the Court approving, as filed, the Expense Application, and no further hearing on the Expense Application is necessary; plus

5. Escrow, pending further Court order, a reserve for approved Hitachi Post-Petition Fees, Costs and Expenses (as defined in the Hitachi Claims Order, for the period on and after January 1, 2019, in the amount of $90,000.00.

B. **<u>CMP</u>**: Pursuant to the *Order Authorizing and Approving Debtors' Retention of a Chief Marketing Professional* [Docket No. 228], Joseph M. Coleman shall receive at Closing payment in accordance with 11 U.S.C. § 326(a) in the amount of $998,250.00.

C. **<u>Broker</u>**: Pursuant to the *Order Granting Expedited Application to Retain Broker* [Docket No. 260], Icon Global Group/Briggs Freeman Sotheby's International Realty shall receive a 6% commission in the amount of $1,950,000.

       D. **Waterfall Escrow**: Escrow, pending further Court order, a reserve in the amount of $2,006,000 for the benefit of Hitachi America, Ltd. in connection with the Net Proceeds calculation as provided in ¶ 5(b)(ii) of the Hitachi Claims Order.

Notwithstanding the escrowed amounts set forth in paragraphs 14.A(5) and 14.D of this Order, such escrowed amounts shall not constitute a limitation upon Hitachi or Hitachi America, Ltd., or otherwise affect any parties' rights related thereto, with all such rights being expressly reserved.

      15.    <u>Attachment to Sale Proceeds</u>.  Any pre or post-petition Liens and Claims on the Property shall attach only to the sale proceeds of assets sold hereunder, to the same extent, priority and validity that existed as of the Closing Date without the necessity of further filing, recording or other perfection and otherwise pursuant to prior orders of this Court.  This Order may be filed, recorded or otherwise placed in the public records of any governmental authority, public office or any other entity to evidence the perfection of any secured lenders' liens on the sale proceeds of its collateral.

      16.    <u>Free and Clear</u>.  Upon the Closing, and unless otherwise specifically provided for herein or in the Purchaser APA, those parties holding Liens and Claims related to the Property are directed to execute such documents and take all other action necessary to release such Liens and Claims in the Property, as may have been recorded or may otherwise exist.  The Debtors' Representative is further authorized, directed and ordered to execute such documents and take all other actions necessary to effectuate the terms of the Purchaser APA and this Order.

      17.    <u>Discharge of Liens</u>.  The Debtors and Purchaser are hereby authorized to file, register, or otherwise record this Order with any and all local and state taxing and other governmental authorities.  This Order shall constitute due and sufficient evidence that, upon the Closing, all Liens and Claims in or against the Property prior to and through the Closing Date have been unconditionally released, discharged and terminated.

18.     <u>Further Discharge of Liens</u>.  If any person or entity (other than Hitachi) that has filed a mechanic's and/or materialmen's lien, deed of trust, mortgage, judgment lien, financing statement or other document or agreement evidencing Liens and Claims in, on or against the Property shall not have delivered to Purchaser at or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims, encumbrances or interests that the person or entity has against the Property, the CMP, Debtors, and Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity after the occurrence of the Closing.

**D.      ASSUMPTION AND ASSIGNMENT OF DESIGNATED CONTRACTS**

19.     <u>Assumption and Assignment</u>.  Pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, the contract identified on **<u>Exhibit E</u>** to the Purchaser APA, namely that certain Grazing Lease No. 8634 by and between KC7 Ranch, Ltd., as lessee, and Texas Pacific Land Trust, as lessor (the **"Designated Contract"**), shall be assumed and assigned to Purchaser effective as of Closing.  Additionally, Debtors shall obtain a recordable Memorandum of the Designated Contract, if necessary, for the Title Company to issue the Title Policy (as defined in the Purchaser PSA).  No cure amounts are due and owing Texas Pacific Land Trust, as lessor, of the Designated Contract.

20.     <u>Designated Contract</u>.  The Debtors are hereby authorized and directed, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to: (a) assume and assign to Purchaser, effective upon Closing, the Designated Contract; and (b) execute and deliver to Purchaser such documents or other instruments as may be necessary or preferable to assign and transfer such Designated Contract to Purchaser, including <u>Exhibit E</u> to the Purchaser APA.

21.     <u>Transfer of Unexpired Lease</u>.  Except as provided herein, the Designated Contract shall be transferred to and remain in full force and effect for Purchaser's benefit in accordance with

their respective terms, notwithstanding any provision in any such Designated Contract (including, without limitation, those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to such Designated Contract after their assumption and assignment to Purchaser.

22. <u>Defaults Cured</u>. All defaults of the Debtors under the Designated Contract arising or accruing prior to Closing shall be deemed cured and all other requirements of section 365(b) shall be deemed satisfied.

23. <u>Debtors' Protections</u>. Except as otherwise provided herein, each non-debtor counter-party to a Designated Contract is hereby forever barred and estopped from asserting against the Debtors, their estates, Purchaser, or property of either one of them, any default existing as of the Sale Hearing or, as against Purchaser, any counterclaim, defense, setoff, recoupment, or any other claim asserted or assertable against the Debtors with respect to the Designated Contract.

24. <u>Future Performance</u>. Purchaser has provided adequate assurance of future performance of the Designated Contracts within the meaning of section 365(f)(2) of the Bankruptcy Code.

## E. ORDER EFFECTIVE IMMEDIATELY

25. This Order is effective and enforceable immediately upon entry notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules, including, without limitation, Bankruptcy Rules 6004(h) and 6006(d).

26. At Closing, the Title Company shall disburse and/or escrow, as the case may be, in addition to the amounts necessary to payoff Hitachi's liens and such other amounts set forth in paragraph 14 herein, the following amounts: (i) $100,401 for the Owner Title Policy, (ii) $2,500 in other Title Charges, (iii) $5,845.50 for survey fees, ad valorem and related property taxes,

included pro-rated amounts, and such other amounts as set forth on the Title Company's closing statement as approved by both the Title Company and Debtors, as sellers. The Title Company is authorized to pay amounts substantially similar to items (i) through and including (iii) in this paragraph, given the final amounts may differ by immaterial amounts. After Closing and the payment as provided herein and in the Title Company's closing statement together with any appropriate escrows, all remaining amounts shall be delivered to the Debtors by the Title Company.

## F.  RETENTION OF JURISDICTION

27.     This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Purchaser APA, and all aspects of this Order and further to hear and determine any and all disputes between the Debtors, CMP, the Purchaser and/or any interested party.

### ### END OF ORDER ###

Prepared By:

Joseph M. Coleman
State Bar No. 0456610
KANE RUSSELL COLEMAN LOGAN PC
3700 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201
Telephone: (214) 777-4200
Telecopier: (214) 777-0049
E-mail: jcoleman@krcl.com

# EXHIBIT "B"



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed October 3, 2018

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 17-45166-mxm** |
| **KC7 RANCH, LTD, et al.,** | § | **Chapter 11** |
| | § | **(Jointly Administered)** |
| Debtors. | § | |

---

### ORDER GRANTING EXPEDITED APPLICATION TO RETAIN BROKER

---

Came on for consideration the *Expedited Application to Retain Broker* [Docket No. 246] (the **"Application"**) filed by Joseph M. Coleman, the Chief Marketing Professional in the above captions jointly administered bankruptcy cases (the **"CMP"**). The Court finds that sufficient notice of the Application was given, that no further notice is required, and that based upon the Brokerage Agreement[1] and the Uechtritz Declaration submitted pursuant to Federal Rule of Bankruptcy Procedure 2014 in support thereof: (1) KC7 Ranch, Ltd.'s retention by and through the CMP, of Bernard Uechtritz and the Icon Global Group (the **"Broker"**) in accordance with the terms of the Brokerage Agreement is necessary, is based upon the sound business judgment of the CMP, and is

---

[1] All capitalized terms not defined herein shall have the definition ascribed to them in the Application.

in the best interests of the Debtors' estates and creditors; and 2) Mr. Uechtritz and the Icon Global Group do not hold or represent an interest adverse to the Debtor, its creditors, or its estate with respect to the matters for which they will be engaged and are otherwise "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code. It is therefore:

**ORDERED** that the Application is granted and the terms and requests set forth in such Application are approved such that the CMP shall be and is hereby authorized to retain and employ Broker on behalf of KC7 Ranch, Ltd., pursuant to the terms and conditions of the Application and the Brokerage Agreement. It is further

**ORDERED** that the Brokerage Agreement shall be amended to specifically exclude from assets to be sold: (i) those assets identified in that certain *Agreed Order Regarding Ranch Contents* entered by Arbitrator Roland Johnson of the American Arbitration Association in Case No. 01-17-0003-3695, styled In the Matter of the Arbitration between Glenn M. Darden, et al. v. Thomas D. Darden, et al.; and (ii) the Debtor's 2016 Suburban, 2016 Lexus, 2014 Black Jeep Wrangler Unlimited, 2004 Ford Excursion, and Suburban motor and parts as identified on the Debtor's *Schedule A/B: Assets – Real and Personal Property* [Docket No. 53], which vehicles shall be sold separately unless the Debtor later agrees, at the Broker's request to the inclusion of the aforementioned vehicles. It is further

**ORDERED** that Broker shall be and hereby is employed pursuant to section 328 of the Bankruptcy Code. It is further

**ORDERED** that the CMP, on behalf of KC7 Ranch, Ltd., shall be, and hereby is authorized to execute such documents and to take such actions as are necessary to effectuate the Brokerage Agreement, and to cause the sale of the Property, as set forth in the Application.

### # # # END OF ORDER # # #

Prepared by:
Joseph M. Coleman
State Bar No. 0456610
John J. Kane
State Bar No. 24066794
**KANE RUSSELL COLEMAN LOGAN PC**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201
Telephone: (214) 777-4200
Telecopier: (214) 777-0049
E-mail: jcoleman@krcl.com

# EXHIBIT "C"

H-67/21, 1/08/21                                                              Return to:

CV2002661                                                    JENNIFER WRIGHT
                                                         **COUNTY AND DISTRICT CLERK**
THE STATE OF TEXAS                                             P.O. BOX 398
                                                         FORT DAVIS, TEXAS 79734
COUNTY OF JEFF DAVIS                                   394TH JUDICIAL DISTRICT COURT

## CITATION FOR PERSONAL SERVICE

To:  BERNARD UECHTRITZ, Individual
     4023 ANNS LANE
     ALLEN, TEXAS 75002,
     or wherever he may be found

**NOTICE TO DEFENDANT:**
    **YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY
DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY
10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER
YOU WERE SERVED THIS CITATION AND PETITION; A DEFAULT JUDGMENT MAY BE TAKEN
AGAINST YOU.**
        You are hereby commanded to appear by filing a written answer to the petition of plaintiff at or before
10 o'clock a.m. of the Monday next after the expiration of twenty days after the date of service of this citation before the
Honorable 394TH JUDICAL DISTRICT COURT Jeff Davis County, Texas at the Courthouse in the City of Fort Davis,
Texas.
        Said petition was filed in said Court on the 24th day of December, 2020, in this cause, numbered
CV2002661 on the docket of said Court and styled:

JAMES L. AHERN JR.                 VS.            BERNARD UECHTRITZ, Individual

        The nature of this demand is fully shown by a true and correct copy of the petition, accompanying this
citation and made a part hereof. The Officer executing this citation shall promptly serve the same according to
requirements of law, and mandates thereof, and make due return as the law directs.
        Issued and given under my hand and seal of said Court at Fort Davis, Jeff Davis County, Texas, this the
30th day of December, 2020.

                                          Jennifer Wright, District Clerk
                                          P. O. Box 398 (111 N Front Street)
                                          Fort Davis, TX  79734-0398

                                  By: _____ Deputy

---

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand this ___ day of _____, 2021, and executed at _____, within the
County of _____ at ___ o'clock ___m. on the ___ day of _____ , _____, by delivering to the
within named _____, in person, a true copy of this citation together with the
accompanying copy of the petition, and endorsed on said copy of citation the date of delivery.

                              Sheriff/Constable of _____County, Texas

                              By: _____Deputy

                              or authorized person: _____

Subscribed and sworn to before me, the undersigned authority, this ___ day of _____, _____.

                              _____
                              Notary Public
                              Commission Expires: _____

CV2002661

THE STATE OF TEXAS

COUNTY OF JEFF DAVIS

394TH JUDICIAL DISTRICT COURT

## CITATION FOR PERSONAL SERVICE

To:     BERNARD UECHTRITZ, Individual
4023 ANNS LANE
ALLEN, TEXAS 75002,
or wherever he may be found

**NOTICE TO DEFENDANT:**
     **YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY
     DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY
     10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER
     YOU WERE SERVED THIS CITATION AND PETITION; A DEFAULT JUDGMENT MAY BE TAKEN
AGAINST YOU.**
     You are hereby commanded to appear by filing a written answer to the petition of plaintiff at or before
10 o'clock a.m. of the Monday next after the expiration of twenty days after the date of service of this citation before the
Honorable 394TH JUDICAL DISTRICT COURT Jeff Davis County, Texas at the Courthouse in the City of Fort Davis,
Texas.
     Said petition was filed in said Court on the 24th day of December, 2020, in this cause, numbered
CV2002661 on the docket of said Court and styled:

JAMES L. AHERN JR.                    VS.              BERNARD UECHTRITZ, Individual

     The nature of this demand is fully shown by a true and correct copy of the petition, accompanying this
citation and made a part hereof. The Officer executing this citation shall promptly serve the same according to
requirements of law, and mandates thereof, and make due return as the law directs.
     Issued and given under my hand and seal of said Court at Fort Davis, Jeff Davis County, Texas, this the
30th day of December, 2020.

Jennifer Wright, District Clerk
P. O. Box 398 (111 N Front Street)
Fort Davis, TX   79734-0398

By: _____ Deputy

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand this ___ day of _____, 2021, and executed at _____, within the
County of _____ at ___ o'clock ___m. on the ___ day of _____ , _____, by delivering to the
within named _____, in person, a true copy of this citation together with the
accompanying copy of the petition, and endorsed on said copy of citation the date of delivery.

Sheriff/Constable of _____County, Texas

By: _____Deputy

or authorized person: _____

Subscribed and sworn to before me, the undersigned authority, this ___ day of _____, _____.

_____
Notary Public
Commission Expires: _____

Cause No. CV2002661

| | |
|---|---|
| **James L. Ahern, Jr.,**<br>Plaintiff,<br><br>v.<br><br>**Robert Moulton Briggs,**<br>**Briggs/Freeman Real Estate**<br>**Brokerage, Inc. d/b/a Briggs**<br>**Freeman Sotheby's International**<br>**Realty, IG Icon Global Real Estate,**<br>**LLC, Matthew Clark McWilliams,**<br>**MCM Real Estate Advisors, LLC,**<br>**and Bernard Uechtritz,**<br>Defendants. | **In the District Court of**<br><br>**Jeff Davis County, Texas**<br><br><br>394th ___ **Judicial District** |

## Plaintiff's Original Petition and Request for Disclosure

Plaintiff James L. Ahern, Jr. ("Plaintiff" or "Ahern") files this his Original Petition and Request for Disclosure against Robert Moulton Briggs, Briggs/Freeman Real Estate Brokerage, Inc. d/b/a Briggs Freeman Sotheby's International Realty, IG Icon Global Real Estate, LLC, Matthew Clark McWilliams, MCM Real Estate Advisors, LLC, and Bernard Uechtritz ("Defendants").

### Discovery Control Plan

1.     Plaintiff intends that discovery be conducted under Discovery Level 2.

### Parties

2.     Plaintiff James L. Ahern, Jr. is an individual who resides in Texas.

3.     Defendant Robert Moulton Briggs is a Texas resident who may be served with process at 5600 West Lovers Lane, Suite 224, Dallas, Texas 75209, or wherever he may be found.

4.     Defendant Briggs/Freeman Real Estate Brokerage, Inc. (doing business as Briggs Freeman Sotheby's International Realty) is a Texas corporation with its principal place of business in Texas. It may be served with process through its registered agent, Robert Briggs, 5600 West

1

Lovers Lane, Suite 224, Dallas, Texas 75209, or by any other means authorized by law.

5.      Defendant IG Icon Global Real Estate, LLC is a Texas limited liability company with its principal place of business in Texas. It may be served with process through its registered agent, Bernard Uechtritz, 4023 Anns Lane, Allen, Texas 75002, or by any other means authorized by law.

6.      Defendant Matthew McWilliams is a Texas resident who may be served with process at 4041 Shadow Drive, Fort Worth, Fort Worth, TX 76116, or wherever he may be found.

7.      Defendant MCM Real Estate Advisors, LLC is a Texas limited liability company with its principal place of business in Texas. It may be served with process through its registered agent, Matthew McWilliams, 4041 Shadow Drive, Fort Worth, Texas 76116, or by any other means authorized by law.

8.      Defendant Bernard Uechtritz in a Texas resident who may be served with process at 4023 Anns Lane, Allen, Texas 75002, or wherever he may be found.

### Jurisdiction and Venue

9.      This Court has subject matter jurisdiction because the amount in controversy and the damages sought are within the jurisdictional limits of the Court.

10.     Venue is proper in Jeff Davis County because a substantial portion of the events or omissions giving rise to the claims herein occurred in Jeff Davis County.

### Background

11.     This case is about the real estate sales commission on the 31,000-acre KC7 Ranch in Balmorhea, Jeff Davis County, Texas.

12.     In 2018, the owners of the ranch filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth

Division. As part of the bankruptcy, the KC7 Ranch was then listed for sale.

13.     Defendants in this case are the real estate agents and brokers who listed and marketed the KC7 Ranch for sale: Defendant Bernard Uechtritz ("Uechtritz") is a licensed Texas real estate agent (Texas real estate agent license number 524403), and is the principal and sole manager of Defendant IG Icon Global Real Estate, LLC ("Icon"); Defendant Robert Moulton Briggs is a licensed Texas real estate broker (Texas real estate broker license number 265904), and is the president, sole director, and designated officer of Briggs/Freeman Real Estate Brokerage, Inc. ("Briggs/Freeman") (Texas real estate brokerage license number 287843); and Defendant Matthew Clark McWilliams ("McWilliams") is a Texas licensed real estate broker (Texas real estate broker license number 518958), and is the principal and sole manager of Defendant MCW Real Estate Advisors, LLC ("MCW") (Texas real estate brokerage license number 9003990).

14.     In October of 2018, on behalf of Defendants, Defendants Icon/Uechtritz sent a marketing email about the KC7 Ranch to a large group of real estate professionals, including Plaintiff Ahern, a Texas real estate broker. Upon receipt of the email, Ahern contacted his longtime client, Paul Foster ("Foster"), to see if he had any interest in purchasing the ranch. Ahern had represented Foster in connection with the purchase of several ranch properties in the past. Foster indicated that he was interested in the ranch, so Ahern reached out to Defendants and arranged to show the property to Foster. Foster liked the property and ultimately purchased it for $32.5 million.

15.     Ahern played an instrumental role as the buyer's agent for this transaction. He brought the transaction to Foster's attention, introduced Foster to Defendants, assisted Defendants in providing Foster and his team access to the transaction data room, completed a preliminary viewing of the property on Foster's behalf, accompanied Foster on his tour of the KC7 Ranch, and engaged in post-tour discussions and negotiations concerning the property. But for Ahern's

actions, the transaction almost certainly would not have occurred.

16.     During the early stages of the transaction, Ahern and Foster requested that Ahern be added to the transactional documents so that Ahern would receive his 50% share of the sales commission at the KC7 Ranch closing. Defendants responded that because this was a bankruptcy sale, Ahern could not be included on the transactional documents. Instead, Defendants promised that, in exchange for Ahern's introduction of Foster and work obtaining the buyer, Defendants would receive 100% of the sales commission, and then they would turn around and pay Ahern his 50% share. Ahern agreed.

17.     Throughout the transaction, Defendants then repeatedly reassured Ahearn and Foster that they would "take care of" Ahern and make sure he received his 50% commission.

18.     The closing occurred in December 2018, and Defendants were paid a commission of $1,950,000.00. Under the terms of the valid and binding oral contract between Defendants and Ahern, Ahern was entitled to receive 50% of that amount or $975,000.00. However, Defendants failed to pay Ahern as promised. In response to Ahern's repeated demands for payment, Defendants then tried to renegotiate the amount they would pay him. Notably, during this time, Defendants revealed that they never intended to pay Ahern the standard (and promised) 50% sales commission. Although Ahern brought the buyer to the property and did everything he was supposed to do to support the sale, Defendants have failed to pay Ahern a single dime, thus making this lawsuit necessary.

## Causes of Action

19.     For each cause of action below, Plaintiff incorporates by reference each of the preceding paragraphs as if set forth fully therein.

## Breach of Contract

20.     A valid and binding contract was created by and between Defendants and Ahern to split the real estate sales commission on the KC7 Ranch.

21.     By making Foster, a very long-term and important client, aware of the sale of the KC7 Ranch, introducing him to Defendants, personally bringing Foster to the property and accompanying during his tour of the ranch, assisting Foster and his team during the transaction and acting as a liaison between Defendants and Foster and his team, Ahern fully performed his obligations under the contract.

22.     In refusing to pay Ahern his fully earned $975,000.00 share of the commission, Defendants have materially breached their obligations under the contract.

23.     Ahern suffered significant financial losses in excess of $975,000 as a direct and proximate result of this breach.

### Fraud, fraudulent inducement, and/or negligent misrepresentation.

24.     Defendants engaged in a pattern of fraud and/or negligent misrepresentations as detailed herein, including but not limited to a) falsely contending that Ahern could not be added to the transactional documents due to this being a bankruptcy sale and b) falsely stating that they intended to pay Ahern his earned 50% share of the sales commission.

25.     These material representations were false, which Defendants knew or recklessly made without any knowledge of the truth thereof and failed to exercise reasonable care or competence in obtaining or communication the information.

26.     These statements were intended to induce Ahern to forgo being added to the KC7 Ranch transaction documents or insisting that Defendants enter into a separate agreement regarding the splitting of the commission.

27.     Ahern did, indeed, rely upon these material representations in making his decisions regarding documenting the commission split and in continuing to help facilitate the transaction with Foster.

28.     Ahern suffered significant financial losses in excess of $975,000.00 as a direct and proximate result of his reliance on these material misrepresentations.

### Unjust Enrichment

29.     In the alternative, Ahern provided benefits to Defendants for which Ahern reasonably expected reimbursement. Defendants accepted those benefits by fraud, duress, or the taking of undue advantage and without paying reasonable compensation therefor. In refusing to pay Ahern his 50% share of the commission, Defendants have been unjustly enriched to the damage of Ahern in an amount in excess of $975,000.00 or such other amount as may be determined at trial. Accordingly, Ahern seeks the value of the benefits he conferred to Defendants.

### Money Had and Received

30.     In the alternative, Defendants hold money that in equity and good conscience belongs to Ahern in an amount in excess of $975,000.00 or such other amount as may be determined at trial. Accordingly, Ahern seeks the value of the benefits he conferred to Defendants.

### Promissory Estoppel

31.     Defendants repeatedly promised that Ahern would receive his fully earned $975,000.00 share of the commission.

32.     Defendants could reasonably foresee that Ahern would rely on that promise.

33.     Ahern did rely on that promise to his significant detriment, including but not limited to: (i) giving up his right to insist that he be added to the KC7 transaction documents; (ii) insisting upon a separate agreement with Defendants concerning the splitting of the commission, (iii)

6

entering into an agreement with Foster regarding the commission, and (iv) continuing to work to facilitate the transaction with Foster. This reliance was the direct and proximate cause of financial losses to Ahern in excess of $975,000.00.

## Negligent Supervision

34.     Defendants Briggs and Briggs/Freeman, as the supervising broker, had a duty to oversee and supervise the actions of the other Defendants, and especially Defendants Icon and Uechtritz, and to prevent them from engaging in any fraudulent, tortious or illegal activity directed at Ahern.

35.     As a supervising broker, Defendants Robert Briggs and Briggs/Freeman had the authority to exercise control over the other Defendants to prevent them from engaging in in fraudulent, tortious or illegal activity directed at Ahern.

36.     Defendants Robert Briggs and Briggs/Freeman failed to exercise such control and thereby breached their duty of care to Ahern. Such failure was either intentional or in disregard of Defendants Robert Briggs' and Briggs/Freeman's duty to use reasonable care in their oversight and supervision of Defendants.

37.     As a direct result of Defendants Robert Briggs' and Briggs/Freeman's breach of their obligation to oversee and supervise the other Defendants, Ahern suffered actual and foreseeable damages in excess of $975,000.00.

## Conspiracy

38.     Defendants had a meeting of the minds to accomplish the object of not paying Ahern his share of the commission.

39.     Defendants committed the above-described unlawful, overt acts.

40.     As a direct result of this conspiracy, Ahern suffered actual and foreseeable damages

in excess of $975,000.00.

41.     Defendants are therefore jointly and severally liable for all torts committed by or in furtherance of this conspiracy.

### Aiding and Abetting

42.     Defendants committed the tortious results described above. Each Defendant knew that the other Defendants' conduct constituted these torts. Each Defendant provided substantial assistance to the other Defendants in accomplishing the tortious results.

43.     Defendants' conduct constituted breaches of duty to Ahern. Each other Defendants' participation was a substantial factor in causing such breaches and are therefore liable for same.

### Respondeat Superior

44.     An agency or employer/employee relationship existed between one or more Defendants.

45.     Defendants committed the actions or inactions described above in the course and scope of their employment or agency.

46.     To the extent any such conduct was committed outside of the course and scope of Defendants' employment or agency, the other Defendants ratified such actions.

### Exemplary Damages

47.     Ahern hereby seeks an award of exemplary damages against all Defendants.

### Attorney's Fees

48.     Ahern seeks recovery of his reasonable and necessary attorneys' fees.

### Conditions Precedent

49.     All conditions precent to the filing hereof have been satisfied.

### Rule 47 Statement

50.     Plaintiff seeks monetary relief over $1,000,000, plus attorneys' fees.

### Rule 193.7 Notice

51.     Please take notice that Plaintiff intends to use the documents produced by Defendants and others herein in the trial of this matter.

### Request for Disclosure

52.     Plaintiffs request disclosure of all matters described in Texas Rule of Civil Procedure 194.2 within fifty days of service hereof.

### Prayer

Plaintiff prays that the Court award all legal and equitable relief to which he is entitled, including, without limitation, actual damages, pre- and post-judgment interest, exemplary damages, costs, attorney fees, and such other relief to which he may be justly entitled.

Respectfully submitted,

**Meade & Neese LLP**

*/s/ D. John Neese, Jr.*
D. John Neese
State Bar No. 24002678
Andrew K. Meade
State Bar No. 24032843
Wayne D. Collins
State Bar No. 00796384
Leann M. Pinkerton
State Bar No. 24038826
2118 Smith Street
Houston, Texas 77002
(713) 355-1200
jneese@meadeneese.com
ameade@meadeneese.com
wcollins@meadeneese.com
lpinkerton@meadeneese.com

# EXHIBIT "D"

CAUSE NO. CV-2002661

| | | |
|---|---|---|
| **JAMES L. AHERN, JR.** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| **ROBERT MOULTON BRIGGS,** | § | |
| **BRIGGS/FREEMAN REAL ESTATE** | § | |
| **BROKERAGE, INC., D/B/A BRIGGS** | § | **JEFF DAVIS COUNTY, TEXAS** |
| **FREEMAN SOTHEBY'S INTER-** | § | |
| **NATIONAL REALTY, IG ICON** | § | |
| **GLOBAL REAL ESTATE, LLC,** | § | |
| **MATTHEW CLARK MCWILLIAMS,** | § | |
| **MCM REAL ESTATE ADVISORS, LLC,** | § | |
| **AND BERNARD UECHTRITZ** | § | |
| **Defendants.** | § | **394th JUDICIAL DISTRICT** |

**DEFENDANTS BERNARD UECHTRITZ'S AND**
**IG ICON GLOBAL REAL ESTATE, LLC'S**
**ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW BERNARD UECHTRITZ AND IG ICON GLOBAL REAL ESTATE, LLC,

defendants in the above-referenced case (the "Defendants"), and file this their original answer to

the petition filed herein:

1.      Defendant Bernard Uechtritz enters a general denial.

2.      Defendant IG Icon Global Real Estate, LLC enters a general denial.

3.      The Defendants deny each and every, all and singular, the material allegations of

fact and law contained in the Plaintiff's Original Petition, and demand strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, the Defendants request that the Petition be

dismissed or that, in the alternative, upon final trial on the merits, if necessary, that the Plaintiff

take nothing and that Defendants be awarded their costs together with such other relief as to which

they may be justly entitled.

Dated: January 27, 2021.

Respectfully submitted,

_/s/ Joyce W. Lindauer_
Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email:
joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com
ATTORNEYS FOR BERNARD UECHTRITZ
AND IG ICON GLOBAL REAL ESTATE,
LLC

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been delivered via email and certified mail to the below counsel of record, on this the 27th day of January, 2021.

D. John Neese
Andrew K. Meade
Wayne D. Collins
Leann M. Pinkerton
Meade & Neese, LLP
2118 Smith St.
Houston, Texas 77002

_/s/ Joyce W. Lindauer_
Joyce W. Lindauer

Defendants Bernard Uechtritz's and
IG Icon Global Real Estate, LLC's Original Answer
Page 2